COOLEY LLP
KYLE C. WONG (224021)
(kwong@cooley.com)
101 California Street
5th Floor
San Francisco, California 94111-5800
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

SCOTT W. STEMETZKI (Va. Bar No. 86246)
(*pro hac vice* forthcoming)
(sstemetzki@cooley.com)
11951 Freedom Drive, 14th Floor
Reston, VA 20190-5656
Telephone: (703) 456-8000
Facsimile: (703) 456-8100

*Attorneys for Plaintiffs*
*Elizabeth Sines, Seth Wispelwey, Marissa Blair, April Muniz, Marcus Martin, Natalie Romero, Chelsea Alvarado, John Doe, and Thomas Baker*

FILED
JUN 16 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SK
CV 20 80104MISC

| | |
|---|---|
| Elizabeth Sines, Seth Wispelwey, Marissa Blair, April Muniz, Marcus Martin, Natalie Romero, Chelsea Alvarado, John Doe, and Thomas Baker,<br><br>Plaintiffs,<br><br>v.<br><br>Kyle Chapman,<br><br>Defendant. | Case No. ________________<br><br>**PLAINTIFFS' MOTION TO COMPEL AGAINST KYLE CHAPMAN**<br><br>HEARING DATE: JULY 17, 2020<br>TIME: 10:00 A.M.<br>COURTROOM: __________<br>JUDGE: ______________ |

# TABLE OF CONTENTS

Page

STATEMENT OF RELIEF SOUGHT ........ 1
STATEMENT OF ISSUES TO BE DECIDED ........ 1
MEMORANDUM OF POINTS AND AUTHORITIES ........ 2
INTRODUCTION ........ 2
JURISDICTION ........ 2
BACKGROUND ........ 3
I. the Underlying Action Seeks to Hold the Planners and Perpetrators of Violence at the Unite the Right Rally Responsible for the Injuries They Caused Plaintiffs ........ 3
 A. The Unite the Right Rally was Carefully Planned to Instigate Violence ........ 3
 B. Kyle "Based Stickman" Chapman is the Face of FOAK ........ 5
 C. Chapman Helped Plan and Promote the Unite the Right Rally. ........ 6
II. Relevant Procedural History. ........ 6
 A. Chapman Claimed to Represent FOAK in the Charlottesville Action. ........ 6
 B. Plaintiffs' Narrowly Tailored Subpoena. ........ 7
 C. Plaintiffs Sought Discovery From the Parties Before Enforcing the Subpoena on Chapman ........ 7
 D. Chapman Refuses to Produce any Documents ........ 8
 E. The Scheduling Order in the Underlying Case ........ 8
LEGAL STANDARDS ........ 9
ARGUMENT ........ 9
I. Chapman's First Objections Are Meritless. ........ 9
II. Chapman's Boilerplate and Non-Specific Objections Are Invalid. ........ 9
III. Chapman's Bogus Objections Demonstrate He Is Stonewalling. ........ 10
IV. Chapman's Remaining Arguments Fail. ........ 13
CONCLUSION ........ 14

# TABLE OF AUTHORITIES

Page

**Cases**

*A. Farber and Partners, Inc. v. Garber*,
234 F.R.D. 186 (C.D. Cal. 2006) ........ 10

*Castaline v. Aaron Mueller Arts*,
2010 WL 11583447 (N.D. Cal. 2010) ........ 9, 10

*In re DG Acquisition Corp.*,
151 F.3d 75 (2d Cir.1998) ........ 14

*Gonzales v. Google, Inc.*,
234 F.R.D. 674 (N.D. Cal. 2006) ........ 9

*Green Payment Sols., LLC v. First Data Corp.*,
2018 WL 6333696 (C.D. Cal. 2018) ........ 10

*Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*,
301 F.R.D. 426 (N.D. Cal. 2014) ........ 9

*In re Outlaw Labs., LP Litig.*,
2020 WL 1083403 (S.D. Cal. Mar. 5, 2020) ........ 13

*Ramirez v. Cty. of Los Angeles*,
231 F.R.D. 407 (C.D. Cal. 2005) ........ 10

*Scruggs v. Vance*,
2011 WL 6368297 (E.D. Cal. 2011) ........ 13

**Statutes**

18 U.S.C.
§ 2702 ........ 11

**Other Authorities**

Fed. R. Civ. P.
26 ........ 10, 13
45 ........ *passim*

**TO THE DEFENDANT**:

**PLEASE TAKE NOTICE** that on July 17, 2020 at 10:00 am, or as soon thereafter as the matter may be heard by the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs will move this Court for an order compelling Defendant Kyle Chapman to comply with a Subpoena to Produce Documents, Information, or Objects that was served upon him in December 10, 2018.

Plaintiffs' motion is based on this notice and motion, the accompanying memorandum of points and authorities, the Declaration of Scott W. Stemetzki, Esq., and exhibits thereto, and any additional argument or evidence the court may consider.

## STATEMENT OF RELIEF SOUGHT

Plaintiffs request the Court issue an order overruling Defendant Chapman's objections and compelling Defendant Chapman to produce all documents that Plaintiffs requested in the subpoena.

## STATEMENT OF ISSUES TO BE DECIDED

Whether Defendant Chapman must comply with the Rule 45 subpoena served on him December 18, 2018?

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs bring this action, pursuant to Federal Rule of Civil Procedure 45, to enforce a third party subpoena served on Kyle Chapman. This action is in the proper court under Rule 45(d)(2).

## INTRODUCTION

On August 11 and 12, 2017, hundreds of neo-Nazis and white supremacists descended upon Charlottesville, Virginia, in order to terrorize its residents, commit acts of violence, and use the town as a backdrop to showcase for the media and the nation a neo-nationalist agenda. These individuals and organizations conspired to plan, promote, and carry out violence that shocked the nation, left dozens injured, and one woman, Heather Heyer, dead. The Plaintiffs in this action are 9 individuals who were severely injured by this violence. They sued 24 of the individuals and organizations that planned the violent events that weekend (collectively, the "UTR Defendants") to hold them responsible for the intended and foreseeable results of their actions in *Sines v. Kessler*, No. 3:17-cv-00072-NKM, in the Western District of Virginia (the "Charlottesville Action").

While Defendant Kyle Chapman is not a named defendant in the Charlottesville Action, he is the face of UTR Defendant Fraternal Order of Alt-Knights ("FOAK"), and he has important and relevant information that Plaintiffs need to prove their claims in that case. Plaintiffs have tried to get this information directly from the UTR Defendants, but have faced significant obstruction and recalcitrance. Similarly, Chapman has obstructed Plaintiffs' efforts to get the information they need and forced Plaintiffs to bring this Motion. The Court should compel Chapman to produce the documents requested by the subpoena.

## JURISDICTION

The Court has subject matter jurisdiction over this action to enforce a federal subpoena pursuant to Fed. R. Civ. P. 45(d)(2). The Court has personal jurisdiction over the Defendant because he resides in San Mateo County, California. Venue is proper in this District pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i). Pursuant to Civil L.R. 3-2(d), this case may be assigned to either the San Francisco or Oakland division because Chapman resides in San Mateo County.

## BACKGROUND

### I. THE UNDERLYING ACTION SEEKS TO HOLD THE PLANNERS AND PERPETRATORS OF VIOLENCE AT THE UNITE THE RIGHT RALLY RESPONSIBLE FOR THE INJURIES THEY CAUSED PLAINTIFFS.

#### A. The Unite the Right Rally was Carefully Planned to Instigate Violence.

The UTR Defendants organized and planned an unpermitted torch-lit march on August 11, 2017, and a rally they called Unite the Right on August 12, 2017 (together, the "Unite the Right Events"). The UTR Defendants are the individuals and organizations that conspired to plan, promote, and carry out the violent events in Charlottesville. Second Amended Complaint, ECF No. 557[1] ("SAC") ¶ 3. They are neo-Nazis, Klansmen, white supremacists, and white nationalists for whom racial, religious, and ethnically motivated violence, threats, intimidation, and harassment is part of their mission and inherent in their underlying ideologies. *Id.* ¶¶ 3, 44. They embrace and espouse racist, anti-Semitic, sexist, homophobic, and xenophobic ideologies. *Id.* ¶ 3.

The Unite the Right Events were part of concerted efforts by the UTR Defendants to move their extremist and genocidal far-right ideologies from the shadows of anonymous, disassociated, online chatrooms and into a more open, organized, physical presence in our parks and on our streets. *Id.* ¶ 44. Starting at least as early as the beginning of 2017, they joined together for the purpose of inciting violence and instilling fear within the community of Charlottesville and beyond, wherever their messages are received. *Id.* ¶ 3. Defendants brought to Charlottesville the imagery of the Holocaust, of slavery, of Jim Crow, and of fascism. *Id.* They chanted "Jews will not replace us," "blood and soil," and "this is our town now." *Id.*

The violence in Charlottesville was no accident. The UTR Defendants planned the Unite the Right Events for several months. *Id.* ¶ 4. They filed a permit for the Rally in May 2017. *Id.* ¶ 54. They set up a network of private chatrooms on a social media platform called Discord dedicated to planning the Unite the Right Events. *Id.* ¶ 70. The Discord chatrooms contain voluminous discussions of violence, including conversations about bringing and disguising weapons, inciting violence, using "self-defense" as pretext to commit violence, military-style tactics to cause

[1] ECF numbers refer to the docket numbers in *Sines v. Kessler*, No. 3:17-cv-00072-NKM (W.D. Va.).

widespread harm, and using cars to run over counter-protestors. *E.g.*, SAC ¶¶ 80-81, 89, 94-96, 103-112, 191. The UTR Defendants utilized podcasts, Twitter, Facebook, and other social media websites to promote the Unite the Right Events. *E.g.*, *id.* ¶¶ 68-70. The UTR Defendants, co-conspirators, and other participants exhorted each other: "If you want to defend the South and Western civilization from the Jew and his dark-skinned allies, be at Charlottesville on 12 August," and, "Next stop: Charlottesville, VA. Final stop: Auschwitz." *Id.* ¶ 4. In countless posts on their own websites and on social media, Defendants and their co-conspirators promised that there would be violence in Charlottesville, and violence there was. *Id.* As Defendant Eli Mosley, one of the lead organizers for the rally, declared: "We are [] going to Charlottesville. Our birthright will be ashes & they'll have to pry it from our cold hands if they want it. They will not replace us without a fight." *Id.*

The planning led to an entirely predictable result: the infamous violence that took place in Charlottesville on August 11 and 12, 2017. On August 11, the UTR Defendants led a torch-lit march through the campus of the University of Virginia, chanting racists and anti-Semitic slogans, including "You will not replace us!" "Jews will not replace us!" "Blood and soil!" "White lives matter!" and "This is our town now!" SAC ¶ 160. They carried tiki-torches (invoking the history of lynch mobs and the KKK), performed Nazi salutes, and invoked other racially-motivated intimidation tactics. *Id.* ¶ 149. They trapped a small group of peaceful counter-protestors, including several Plaintiffs, at a statute of Thomas Jefferson. *Id.* ¶¶ 162-173. Led by the UTR Defendants, the mob beat the counter-protestors to the ground, flung flammable fluids on them, and hurled torches towards them. *Id.* ¶¶ 166-169. They swung helmets and sprayed mace at the un-armed protestors too. *Id.* ¶¶ 169-170.

On August 12, the UTR Defendants led the Unite the Right Rally in a similarly violent fashion. The rally-goers arrived in military formation, and carried shields, semi-automatic rifles, and other weapons, just as they had planned on Discord. *Id.* ¶¶ 194, 205-208. They charged into groups of peaceful counter-protestors, throwing them aside or running them over. *Id.* ¶ 207.

When the Charlottesville police declared the rally unlawful, the UTR Defendants instructed their followers to assemble in a different park. *Id.* ¶¶ 225-226. On the way, the UTR Defendants

attacked more counter-protestors. *Id.* ¶ 227. Additional violence broke out at the second location. *Id.* ¶¶ 228-230.

Once the rally broke up for good, several counter-protestors were walking down a narrow street to leave the chaotic scene. UTR Defendant James Fields, Jr. rammed his car into the crowd, gravely injuring dozens of people, including 7 Plaintiffs, and murdering Heather Heyer. *Id.* ¶¶ 23, 241-244.

### B. Kyle "Based Stickman" Chapman is the Face of FOAK.

Defendant Kyle Chapman is a self-proclaimed "American Nationalist" and right-wing activist who frequently resorts to violence to silence those who disagree with him. He has been convicted of crimes in three separate incidents, all of which involved violence or weapons, since 2017.[2] Two of those incidents related to his "activism."[3] Chapman rose to fame among extremist right-wing groups after he was captured on video beating protestors with a wood club in Berkeley, California in March 2017.[4] He used this fame to launch the right-wing FOAK in the summer of

---

[2] Angela Ruggiero, *Judge increases sentence of Bay Area 'nationalist' protester Kyle 'Stickman' Chapman in weapons case*, The Mercury News (Sep. 26, 2019, 10:25 a.m.), https://www.mercurynews.com/2019/09/25/judge-ups-sentence-for-bay-area-far-right-protester-kyle-stickman-chapman/#:~:text=According%20to%20the%20plea%20deal,50%20hours%20of%20community%20service. He has two additional convictions for grand theft in 2001 and felony robbery in 1993. *Id.*

[3] Emilie Raguso, *Kyle 'Based Stickman' Chapman takes felony plea deal in Berkeley weapons case*, Berkeleyside (Sep. 24, 2019, 4:57 p.m.), https://www.berkeleyside.com/2019/09/24/kyle-based-stickman-takes-felony-plea-deal-in-berkeley-weapons-case. He was also convicted for illegally driving off-road in the Fort Funston conservatory of Golden Gate National Park. Angela Angela Ruggiero, *Bay Area far-right protester Kyle 'Stickman' Chapman takes plea deal in federal case*, East Bay Times (Sep. 26, 2019, 4:26 a.m.), https://www.eastbaytimes.com/2019/01/29/bay-area-far-right-protestor-kyle-based-stickman-chapman-takes-plea-deal-in-feds-case/. He was carrying a weapon at the time of that arrest, which violated the conditions of his bail set in his then-pending criminal case for carrying illegal weapons in Alameda County. Angela Ruggiero, *Right-wing protester charged in Berkeley riot back in custody*, East Bay Times (Dec. 22, 2017, 5:20 a.m.), https://www.eastbaytimes.com/2017/12/21/right-wing-protester-charged-in-berkeley-riot-back-in-custody-after-video-incident/.

[4] Clio Chang, *The Unlikely Rise of an Alt-Right Hero*, The New Republic (Mar. 31, 2017), https://newrepublic.com/article/141766/unlikely-rise-alt-right-hero.

2017.[5] FOAK's purpose was to be the "tactical defensive arm" of the alt-right, with Chapman proclaiming "[w]e don't fear the fight. We are the fight."[6]

### C. Chapman Helped Plan and Promote the Unite the Right Rally.

Capitalizing on his fame and leadership of FOAK, Chapman worked with UTR Defendants, to plan Unite the Right. He exchanged several text messages between May and August, 2017 about coordinating key details concerning the rally.[7] Chapman weighed in on potential dates to hold Unite the Right and discussed ways to promote the event. Chapman also promoted Unite the Right on social media, including over Facebook.[8]

## II. RELEVANT PROCEDURAL HISTORY.

### A. Chapman Claimed to Represent FOAK in the Charlottesville Action.

Plaintiffs filed the Charlottesville Action to hold several of the individuals and organizations that planned the violent Unite the Right Events responsible for the intended and foreseeable results of their actions on October 10, 2017. *See generally* ECF No. 1. FOAK is one of the named defendants in that case. SAC ¶ 41. Chapman accepted service of the Complaint and First Amended Complaint[9] on FOAK's behalf. ECF No. 203, ¶¶ 1-2. He attempted to file a Motion to Dismiss on FOAK's behalf on January 26, 2018. ECF Nos. 202-204. On January 21, 2018, the court struck Chapman's invalid motion to dismiss and ordered FOAK to hire an attorney and respond to the

---

[5] Sothern Poverty Law Center ("SPLC"), *New Alt-Right "Flight Club" Ready for Street Violence*, Intelligence Report Fall Issue (Aug. 8, 2017) https://www.splcenter.org/fighting-hate/intelligence-report/2017/new-alt-right-%E2%80%9Cfight-club%E2%80%9D-ready-street-violence; SPLC, *Fraternal Order of Al-Knights (FOAK)*, https://www.splcenter.org/fighting-hate/extremist-files/group/fraternal-order-alt-knights-foak\ (last accessed Jun 12, 2020).

[6] SPLC, *New Alt-Right "Flight Club" Ready for Street Violence*, Intelligence Report Fall Issue (Aug. 8, 2017) https://www.splcenter.org/fighting-hate/intelligence-report/2017/new-alt-right-%E2%80%9Cfight-club%E2%80%9D-ready-street-violence.

[7] The text messages were marked "Highly Confidential" by the producing party in the Charlottesville Action, and thus the protective order in the Charlottesville Action prohibits Plaintiffs from filing the documents publicly. ECF No. 167 ¶ 4. If the Court wishes to view these documents, Plaintiffs will provide them under seal.

[8] The Facebook posts were marked "Confidential" by the producing party in the Charlottesville Action, and thus the protective order in the Charlottesville Action prohibits Plaintiffs from filing the documents publicly. ECF No. 167 ¶ 4. If the Court wishes to view these documents, Plaintiffs will provide them under seal.

[9] Although the Plaintiffs later filed a Second Amended Complaint, that complaint did not change the allegations against FOAK. *See generally* SAC.

complaint. ECF No. 211. Instead, Chapman submitted a motion to represent FOAK *pro se*. ECF No. 254. The court denied that motion and entered default against FOAK in March 2018. ECF Nos. 271, 274.

**B. Plaintiffs' Narrowly Tailored Subpoena.**

In December 2018, Plaintiffs served a narrowly tailored subpoena on Chapman pursuant to Federal Rule of Civil Procedure 45 containing 9 document requests. Exhibit 1.[10] All the document requests seek information that is relevant to the party's claims and defense and proportional to the needs of this case:

- Request No. 1 asks for documents concerning the Charlottesville Action;
- Request Nos. 2-5 ask for documents related to planning the Unite the Right Events, including efforts to publicize the Unite the Right Events, travel accommodations, and financial information concerning the funding or paying expenses related to the Unite the Right Events;
- Request Nos. 6-8 ask for information related to FOAK, a named UTR Defendant; and
- Request No. 9 seeks information about Chapman's criminal history.

Plaintiffs personally served the subpoena on Chapman on December 10, 2019. Exhibit 2; Exhibit 3.

**C. Plaintiffs Sought Discovery From the Parties Before Enforcing the Subpoena on Chapman.**

Consistent with Rule 45's policy goals of "avoid[ing] imposing undue burden or expense" on a non-party, Plaintiffs focused on getting discovery from the UTR Defendants before enforcing the Chapman subpoena. These efforts proved extraordinarily difficult and time consuming, as the UTR Defendants have been recalcitrant. Plaintiffs have had to file 18 discovery-related motions the Charlottesville Action. ECF Nos. 272, 330, 354, 432, 457, 465, 505, 547, 565, 601, 650, 652, 671, 673, 674, 689, 713, 750. The Western District of Virginia has issued at least 12 orders compelling defendants to participate in discovery. ECF Nos. 379, 483, 508, 515-517, 538, 582, 621, 634, 728, 741. It has issued sanctions or contempt orders against UTR Defendants 9 times,

[10] Exhibits refer to the exhibits attached to the Declaration of Scott W. Stemetzki, Esq. in Support of Plaintiffs Motion to Compel Against Kyle Chapman, filed simultaneously herewith.

including ordering they pay over $47,000 in attorneys' fees and other costs. ECF Nos. 483, 539-540, 599, 602, 610, 738-739. The court even ordered one UTR Defendant to surrender to United States Marshals for contempt. Dkt. Nos. 610, 613, 616.

These efforts took over a year, and remain ongoing today. Through party discovery, Plaintiffs obtained evidence that Chapman communicated with the leaders of the Unite the Right Events and helped the UTR Defendants plan and promote the violent events. However, Plaintiffs also learned that some UTR Defendants failed to preserve, and even intentionally destroyed, documents. *E.g.*, ECF No. 539 at 14-15; ECF No. 671 at 8-9. And Plaintiffs did not receive the documents or information sought in the subpoena.

**D. Chapman Refuses to Produce any Documents.**

Seventeen months have passed since Plaintiffs served the subpoena, and Chapman has not produced a single document. On January 31, 2019,[11] he objected to the form of the subpoena and the court from which it issued. Exhibit 3 ("First Objections"). On April 3, 2019 Chapman issued a second set of objections focusing on the content of the document requests in the subpoena. Exhibit 4 ("Second Objections"). Plaintiffs wrote Chapman a letter on April 24, 2019, responding to his objections and again demanding he comply with the subpoena. Exhibit 5. Plaintiffs never received a response to that letter.[12] On May 22, 2020, Plaintiffs again requested Chapman comply with the document subpoena. Exhibit 7. Chapman responded on May 30, 2020, repeated his April 3, 2019 objections, and refused to produce any documents. Exhibit 6.

**E. The Scheduling Order in the Underlying Case**

The court in the Charlottesville Action has scheduled this case for trial starting October 26, 2020. ECF No. 597. Discovery closes on July 24, 2020. *Id.* Plaintiffs intend to depose Chapman, but they need documents from him in order to do so.

---

[11] Chapman claims that these objections were "timely provided" to the designated organization, but does not state the date he served the objections. The objections are dated December 27, 2018.

[12] Chapman claims he responded on May 1, 2019, but Plaintiffs did not receive any correspondence from Chapman on that date. *See* Exhibit 6.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 45, a party may serve a subpoena that commands a nonparty to, among other things, "produce designated documents . . . in that [party's] possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). Rule 45(d) provides that if the subpoenaed party makes an objection, "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production." Fed. R. Civ. P. 45(d)(2)(B)(i). The scope of discovery a party may maintain through a subpoena is the same as that applicable under Rule 26(b). *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679 (N.D. Cal. 2006).

## ARGUMENT

### I. CHAPMAN'S FIRST OBJECTIONS ARE MERITLESS.

Chapman's only objection in his First Objections that the subpoena issued from the incorrect court is wrong. Rule 45(a)(2) states "[a] subpoena must issue from the court where the action is pending." The subpoena was issued as part of the Charlottesville Action in the Western District of Virginia, and the subpoena issued from the Western District of Virginia. Chapman relies on the 1991 Advisory Committee Notes and case law from 1998 to 2008 to support his objection. However, the Federal Rules were amended in 2013, replacing the prior language in Rule 45(a)(2). *See* Rule 45 Advisory Committee Notes to 2013 Amendments. Therefore, Chapman's authorities are all superseded by the current rules. *E.g.*, *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 428 (N.D. Cal. 2014).

### II. CHAPMAN'S BOILERPLATE AND NON-SPECIFIC OBJECTIONS ARE INVALID.

Chapman's substantive objections are generalized, invalid, boilerplate objections that constitute waiver under Rule 45. For example:

- Chapman objects to *every request* except Request No. 4 as "overly broad, unduly burdensome, oppressive, intended to harass or vex Chapman, and not likely to lead to discovery that is relevant to any party's claim or defense, and is not proportional to the needs of the case." Exhibit 4 at 3, 4, 6, 9, 11, 13, 15, 17. He does not elaborate on any of these generic objections.

- Chapman objects to *every request* except Request No. 1 that various words and terms are "vague and ambiguous." *Id.* at 4, 6, 8, 9, 11, 13, 15, 17. He does not explain why any of the seemingly randomly selected words or phrases are vague or ambiguous.
- Chapman objects to *every request* except Request No. 1 that "it is argumentative and requires Chapman to draw a legal conclusion." *Id.* at 4, 6, 8, 9, 11, 13, 15, 17. He never explains why the requests are argumentative or how they require any legal conclusions.
- Chapman objects to Request Nos. 3, 5, and 7-9 that, "[t]he burden on Chapman to search for and produce the documents as requested outweighs any benefit of the documents. *Id.* at 6, 9, 13, 15, 17. He does not provide any information about how the requests are burdensome.
- Chapman objects to *every request* except Request No. 1 that they "do[] not describe the documents requested 'with reasonable particularity' as required by Federal Rule of Civil Procedure 34(b)." *Id.* at 4, 6, 8, 9, 11, 13, 15, 17. He does not elaborate on why the requests are insufficiently specific.
- Chapman objects that Requests Nos. 2-3, 5-9 are "beyond the scope of this lawsuit" or otherwise irrelevant. *Id.* at 4, 6, 9, 11, 13, 15, 17. Again, he does not explain why that is the case.

As courts have repeatedly warned, such boilerplate objections do not suffice. *E.g.*, *Ramirez v. Cty. of Los Angeles*, 231 F.R.D. 407, 409 (C.D. Cal. 2005) ("The familiar litany of general objections, including overly broad, burdensome, or oppressive, will not alone constitute a successful objection to an interrogatory, nor will a general objection fulfill the objecting party's burden to explain its objections." (citation omitted)); *A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections"); *see also Castaline v. Aaron Mueller Arts*, 2010 WL 11583447, at *5 (N.D. Cal. 2010) (holding that defendants' "general objection" to outstanding discovery requests resulted in defendants having "waived any further objections to … discovery"); *see also Green Payment Sols., LLC v. First Data Corp.*, 2018 WL 6333696, at *2 (C.D. Cal. 2018) (explaining that party's generalized "overbroad and burdensome objections" to discovery "were too general to merit consideration and are therefore waived").

## III. CHAPMAN'S BOGUS OBJECTIONS DEMONSTRATE HE IS STONEWALLING.

Chapman resorts to invalid and improper factual contentions as his basis to refuse to cooperate. He repeatedly objects to the subpoena on the grounds that "Chapman did not have any personal involvement with the logistics or coordination of any rally or event in Charlottesville,

Virginia on May 13, August 11 or 12, 2017." Exhibit 4 at 5; *see id.* at 7, 8, 10. He also repeatedly states that he was not "personally at any rally or event in Charlottesville, Virginia at any time. In fact, Chapman has never even been to the state of Virginia." *Id.* Such factual assertions, which are properly the subject of discovery, are not a recognized ground on which to object to the Subpoena. *See* Rule 26(b) (permitting discovery about "any nonprivileged matter that is relevant to a party's claim or defense . . . ."). As shown above, Background Section II.B, all of Plaintiffs' Requests are relevant to the Charlottesville Action. Chapman's improper objections show he is merely stonewalling. The Court should reject these improper factual contentions.

In any event, Chapman's factual assertions are demonstrably false and insufficient to excuse his failure to comply with the subpoena. For example:

**Request No. 1**: Chapman claims that the only documents he has were served on him by Plaintiffs. Exhibit 4. However, Plaintiffs have obtained text messages between Chapman and UTR Defendants discussing the Charlottesville Action. Defendants are entitled to these and any other communications he has concerning the Charlottesville Action.

**Request No. 2**: Chapman claims that he does not have to answer this Request because he did not attend any Unite the Right Events and that he was locked out of Facebook and Twitter. These objections are irrelevant and demonstrably false. First, whether Chapman attended any Unite the Right Events, or visited the Commonwealth of Virginia, is irrelevant to this request. Request No. 2 seeks "Documents and data sufficient to identify [Chapman's] social media accounts. . . . on which [he] communicated concerning any rally or event on August 11 or 12, 2017, in Charlottesville, Virginia." He can communicate about the events without visiting Virginia.

Second, even if he is locked out of Facebook and Twitter, he must still "provide the consent necessary under the Stored Communications Act, *see* 18 U.S.C. § 2702(b)(3), to permit the providers of electronic communication services and remote computing services, *see* 18 U.S.C. § 2702(a)(1)-(2), to produce the documents." Exhibit 1 at 6-7. Chapman has not done this.

Third, while Chapman provided some information for Facebook and Twitter, he did not provide information for any other social media account, including Discord (where many UTR Defendants and co-conspirators communicated), Gab, or other websites where communications

may have occurred. Chapman must provide the information for all his social media accounts, not just Facebook and Twitter.

**Request No. 3:** Chapman claims that he "did not have any personal involvement with the logistics or coordination" of any Unite the Right Event, and that any relevant documents would be on Facebook or Twitter. These assertions are false. Chapman exchanged several communications with UTR Defendants about planning and coordinating the Unite the Right Events. These messages were exchanged over various mediums, including text messages and Facebook. These communications show Chapman had significant "personal involvement with the logistics and coordination" of the Unite the Right Events, and that involvement was not limited to Facebook and Twitter communications. Thus, Chapman must comply with this request in full, including conducting a reasonable, good-faith search for documents, providing text messages, emails, and other communications related to the Unite the Right Events, and any other documents he may have responsive to this request.

**Request No. 5**: Chapman claims he does not have responsive documents for the same false reasons he asserted in No. 3. The Court should compel him to conduct a good-faith search for responsive documents, including any bank or credit card statements and any documents relating to FOAK's involvement in the Unite the Right Events.

**Request No. 6**: Chapman wastes over two pages objecting to this request, claiming *inter alia*, that "[FOAK] was a loosely created grass root social media Facebook Group and/or Twitter handle" and that "[a]ny loosely FOAK group that Chapman was involved with are no longer in existence or active. If there were any FOAK members at the Charlottesville rallies on May 13, August 11 or 12, 2017, they attended them on their own accord and not as a representative of FOAK or Chapman." But the request seeks documents and communications related to FOAK. Nothing in his pages-long screed excuses him from complying with this request. And his claim that the only relevant documents would be on Facebook and Twitter is belied by the text messages discussed above. Chapman should be compelled to turn over all relevant documents.

**Request No. 7**: Chapman relies on the same excuses he put forth in Request No. 6 to avoid responding to Request No. 7. Furthermore, Chapman's claim that he "is not aware of any FOAK

members at any Berkeley rally or event in 2017" is ludicrous, considering *Chapman himself was arrested for his actions at a Berkley rally in 2017.*[13]

**Request No. 9**: Chapman claims he has no non-privileged documents responsive to this request, and that any such documents would only be available from Facebook or Twitter. Exhibit 4. These claims are insufficient and not credible. First, if Chapman has responsive documents that are privileged, he must serve a privilege log, but he has not done so. Rule 45(e)(2)(A) ("A person withholding subpoenaed information under a claim it is privileged or subject to protection as trial-preparation material must: . . . describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."). Second, as shown above, Chapman falsely claimed that he only communicated using Facebook and Twitter for numerous other requests, and there is no reason to believe his assertion for this request is true.

Chapman also asserts that "responsive documents are already in plaintiffs' possession and I will not re-produce documents that they already have or available to them via pacer or the court system." Exhibit 6. However, "the availability of some of this information in PACER is not a sufficient basis to deny [the requesting party] this discovery." *In re Outlaw Labs., LP Litig.*, 2020 WL 1083403, at *14 (S.D. Cal. Mar. 5, 2020). Chapman must conduct a good-faith search of all the documents in his possession, custody, and control, including his computers, email, and cell phone, and produce any responsive documents.

## IV. CHAPMAN'S REMAINING ARGUMENTS FAIL.

Chapman's most recent letter (Exhibit 6) offers two additional excuses for failing to produce documents, neither of which hold water.

First, Chapman complains that Plaintiffs waited too long to enforce the subpoena. *Id.* This objection is meritless, as Rule 45 expressly allows the party issuing the subpoena to enforce it "at

---

[13] Angela Ruggiero, *Judge increases sentence of Bay Area 'nationalist' protester Kyle 'Stickman' Chapman in weapons case*, The Mercury News (Sep. 26, 2019, 10:25 a.m.), https://www.mercurynews.com/2019/09/25/judge-ups-sentence-for-bay-area-far-right-protester-kyle-stickman-chapman/#:~:text=According%20to%20the%20plea%20deal,50%20hours%20of%20community%20service.

any time" after the subpoenaed party makes objections.[14] Rule 45(d)(2)(B)(i). Furthermore, as explained above, Plaintiffs sought to obtain the discovery from the parties to the case before enforcing the subpoena against Chapman in accordance with the policy goals of protecting non-parties promoted by Rule 45. *Supra*, section II.C; *see also* Rule 45(d), (e); Rule 45 Advisory Committee Notes to 2013 Amendments.

Second, Chapman tries to debunk evidence Plaintiff cited in their April 24, 2019 letter by arguing it did not show Chapman's was physically present in Charlottesville. Exhibit 6. These assertions are irrelevant because he still must comply with the subpoena whether he attended the Unite the Right Events or not. *See* Rule 26(b) (scope of discovery). Additionally, as demonstrated above, through party discovery in the Charlottesville Action, Plaintiffs have developed *even stronger* evidence that Chapman was involved in the planning and coordination of the Unite the Right Events. *Supra*, Facts Section, II.A, C. Plaintiffs need Chapman's documents soon, as third-party discovery closes July 24, and they need a full understanding of Chapman's role in the events underlying the Charlottesville Action. *See* ECF No. 597.

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion and order Chapman to produce all responsive documents, in addition to any other relief as the Court deems just and proper.

---

[14] Indeed, Chapman waived his Second Objections by issuing them over ***100 days*** after the subpoena was served on December 10, 2018. Rule 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."). Additionally, Chapman's Second Objections are invalid because "Rule 45(c)(2)(B) requires the recipient of a subpoena to raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game.'" *Scruggs v. Vance*, 2011 WL 6368297, at *11 (E.D. Cal. 2011) (quoting *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir.1998)) (alterations omitted).

Dated: June 12, 2020

Respectfully submitted,

COOLEY LLP

By: ______________________
Kyle C. Wong (224021)

*Attorney for Plaintiffs*
*Elizabeth Sines, Seth Wispelwey, Marissa Blair, April Muniz, Marcus Martin, Natalie Romero, Chelsea Alvarado, John Doe, and Thomas Baker*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' MOTION TO COMPEL AGAINST KYLE CHAPMAN

15

CASE NO.: ______________